**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3725
_____

PABLO A. DAMIANI,
Appellant

v.

DETECTIVE DUFFY, Delaware State Police;
DETECTIVE GARY POTTS; DETECTIVE DANIEL GRASSI, Troop 2;
DETECTIVE CASEY BOULDIN, New Castle County Police;
DETECTIVE MORRISSEY, Wilmington P.D.;
CORPORAL LANO, State Police Officer;
CORPORAL ERIC DANIELS, State Police Officer;
CORPORAL JOHN DUDZINSKI, State Policer;
CORPORAL MARK HAWK, State Police Officer;
DETECTIVE RONALD KLINE, State Police Officer;
DETECTIVE COREY GODEK; DETECTIVE TSAI, Unit 4156;
DETECTIVE RHOADES, Unit 63T; DETECTIVE GLENN, Unit U806;
ROB KRISILLA; JAMES KELLY; SCOTT GALBREATH; PARTON
_____

On Appeal from the United States District Court
for the District of Delaware
(D. Del. Civil Action No. 1:12-cv-01637)
District Judge: Honorable Richard G. Andrews
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 8, 2018
Before: CHAGARES, BIBAS and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 9, 2018)

———————

OPINION[*]

———————

PER CURIAM

Pablo Damiani appeals pro se from the District Court's grant of summary judgment for defendants, eighteen law enforcement officers. Damiani maintains that defendants violated his civil rights during the course of his arrest and has brought claims pursuant to 42 U.S.C. § 1983 and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), as well as related state law claims. For the reasons that follow, we will affirm the District Court's decision.

I.

After a series of related armed robberies in New Castle County, Delaware, several law enforcement agencies met on December 6, 2010, in a coordinated effort to catch the perpetrators, who used a dark-colored Honda Civic as their getaway car. Defendants Morrissey and Bouldin, county law enforcement officers serving as task force officers with the Bureau of Alcohol, Tobacco, Firearms and Explosives, were stationed at a liquor store that night. They saw an individual who was later identified as Damiani enter the store and, soon after, run out into a dark-colored Honda Civic and quickly drive away.

Bouldin and Morrissey began following the car in their undercover vehicles after a radio dispatcher announced that that liquor store had just been robbed at gunpoint.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Morrissey lost sight of the car, but Bouldin continued his pursuit; numerous other law enforcement vehicles joined him. Damiani led the growing number of cars on a high-speed chase as he attempted to lose them.

Officers eventually caught up to Damiani and surrounded him. Damiani's car windows, other than his windshield, were heavily tinted, preventing officers from seeing clearly into his vehicle. His car doors were locked. Officers ordered Damiani to put his hands up, which he did not immediately do. Damiani maintains that he put his hands up and moved them to his open driver's side window, as commanded, within two minutes of the stop, after some officers came out of their vehicles with police vests and weapons.

Defendant Bouldin handcuffed Damiani through his car window. According to defendants Potts and Daniels, Damiani lowered his hands out of sight below the window and refused orders to stop moving around in his seat and get out of the car for several minutes. Other officers also noted that Damiani refused to comply with orders. Damiani claims that he was fully compliant throughout the handcuffing process.

Officers then opened the driver's side door and tried to extract Damiani, whose shoe was stuck on a seat adjustment lever. As Damiani was quickly pulled out of the car, he cut his heel on the lever. Before he was removed, Damiani was ordered to fall to the ground face-first and Damiani stated that he would. Once Damiani landed on the ground, officers searched him, as they knew the robbery suspect was armed. A loaded gun was later found in the car.

At this point, Damiani's narrative diverges substantially from the officers'. Damiani has testified that once he was on the ground, between two and four officers

3

kicked him in the face, head, chest, stomach, and legs for between thirty seconds and a minute. Damiani asserts that officers then transferred his handcuffs from the front of his body to the back while he was fully compliant, searched him, and moved him face-down to a grassy area where two or three officers again kicked and hit him for some short unspecified period of time. Officers then held him down with their knees until he was placed into a police cruiser. Damiani claims that his left elbow was beaten with a metal rod at some point during his arrest; he has alternately stated that it occurred when he was first removed from his car or that it occurred when he was moved to the grassy area.

Damiani has been unable to describe any officer who allegedly assaulted him. He has repeatedly claimed that certain officers participated in the beating based on his review of discovery materials but has also confused many officers' names in his various accounts. Damiani has provided contrary approximations of how many individuals were involved in the assault and how it occurred. In his complaint, Damiani alleged that all eighteen named defendants assaulted him.

Defendants Bouldin, Potts, Daniels, and Dudzinski have all indicated that they were involved to some extent in the physical process of taking Damiani into custody. They have all stated that they did not kick or strike Damiani and that they did not see anyone else do so. According to Potts, Damiani moved around for several minutes after he was removed from his vehicle. Potts maintains that Damiani struggled to break free from the officers while they transferred his handcuffs and that it took several officers to complete the process. Potts stated that he ordered Damiani to stop resisting and that he used his body weight to get Damiani's unsecured arm behind his back.

4

Daniels also stated that Damiani was struggling while his handcuffs were transferred and noted that Damiani landed face-first on hard asphalt when he was removed from his car. Dudzinski described physically assisting in the process of extracting Damiani from his car. Bouldin initially handcuffed Damiani but claims that he let go of the handcuffs once other officers opened the driver's side car door. After performing a visual inspection on the other side of Damiani's car, Bouldin walked away and did not participate further in the arrest.

Defendant Galbreath used a metal tool to break out the passenger side window of Damiani's vehicle but stated that he had no contact with Damiani. Defendant Parton also stated that he had no contact with Damiani but that he had approached Damiani's vehicle with his rifle until other officers handcuffed Damiani. All other defendants have provided sworn statements indicating that they were never at the scene of Damiani's arrest, arrived after Damiani had been taken into custody, or were present at the scene but did not see Damiani being taken into custody.

Damiani was photographed at the state police barracks after his arrest. The photographs show several abrasions on his face. No other injuries are apparent on Damiani's neck, torso, stomach, back, arms, or elbows; Damiani claims that these photos were somehow digitally altered.

Damiani was then taken to the Newark Emergency Center. His medical records indicate that he had three abrasions on his face and one on the back of his head. Damiani also reported pain in his foot, heel, and knee. There is no record of a complaint about an elbow injury; Damiani claims that he reported several injuries that the medical staff did

5

not record or inspect. He was discharged after an x-ray of his foot revealed no fractures, with instructions to take over-the-counter pain medications and apply ice for pain, as needed. Damiani contends that he has ongoing nerve damage to his elbow and post-traumatic stress disorder from the incident, for which he claims to have sought medical attention. There is no medical evidence of these injuries in the record.

Two days after Damiani was arrested, he called his fiancée from jail and told her about the robberies and the car chase; he did not mention an assault. Similarly, when Damiani was interviewed by detectives four days after his arrest, he did not discuss an assault. In July 2011, while Damiani was negotiating a plea bargain, he sent a letter to the Delaware State Police Internal Affairs Department claiming that he had been assaulted during his arrest. Damiani was convicted of robbery and related offenses.

In December 2012, Damiani filed a complaint in the District Court seeking compensatory and punitive damages for claims of excessive force and failure to intervene. He repeatedly amended his complaint, ultimately naming eighteen law enforcement officers as defendants.[1] Defendants moved for summary judgment, which the District Court granted.[2] Damiani timely appealed.

---

[1] Damiani brought claims against several additional defendants in his initial complaint. The District Court concluded sua sponte that those claims were frivolous and dismissed them with prejudice. Because Damiani does not discuss any pre-judgment rulings in his opening brief, he has waived any challenge to those decisions. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) ("[A]n appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

[2] Damiani twice sought reconsideration of the District Court's grant of summary judgment to defendants; his motions were denied. Damiani filed his notice of appeal in time to challenge the first of those denials. However, by failing to identify any issues

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  We exercise plenary review over a district court's grant of summary judgment.  Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In evaluating a motion for summary judgment, "all justifiable inferences are to be drawn in . . . favor" of the non-moving party.  Id. at 255.  However, a mere "scintilla of evidence" in support of the non-moving party does not create a genuine issue of material fact.  Id. at 252.

III.

The District Court concluded that Damiani's excessive force claims failed because he had not established the personal involvement of the majority of the named defendants, and because the force used by the remaining defendants was reasonable as a matter of law given the record before the Court.  Having concluded that Damiani had not been subjected to excessive force, it determined that defendants had no corresponding duty to intervene.  The District Court then declined to exercise supplemental jurisdiction over Damiani's state law claims.  Damiani argues that the District Court improperly granted

---

with the denial of his first motion for reconsideration in his opening brief, Damiani has waived any challenge to that decision on appeal.  See Pelullo, 399 F.3d at 222.

7

summary judgment in favor of all defendants on his claims.

On this record, we agree with the District Court that summary judgment for defendants was proper. First, Damiani cannot establish the personal involvement of any defendant for his excessive force claims, or for the majority of his failure to intervene claims. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The undisputed record evidence demonstrates that twelve of the named defendants were never present at the scene of Damiani's arrest, arrived after the arrest occurred, or did not see the arrest occur; Damiani cannot establish their personal involvement for any of his claims.

The remaining six defendants — Galbreath, Parton, Bouldin, Potts, Daniels, and Dudzinski — were all either close to Damiani during part of his arrest or were directly involved in restraining him.[3] Ultimately, however, Damiani's claims fail because the record is insufficient for a jury to conclude that any officer used excessive force in the course of his arrest. "[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment

---

[3] Damiani has repeatedly stated that he named the defendants in his complaint solely because their names appeared on paperwork he received in discovery. Damiani's unsupported and inconsistent assertions that these defendants were directly, physically involved in violating his constitutional rights do not permit his excessive force claims to survive summary judgment. See Jutrowski v. Twp. of Riverdale, --- F.3d ---, No. 17-2594, 2018 WL 4443884, at *7 (3d Cir. Sept. 12, 2018) (concluding that a plaintiff's excessive force claims could not survive summary judgment based on the defendants' lack of personal involvement where the plaintiff "narrowed the potential universe of actors to those that were in his immediate vicinity" but was unable to identify the individual who hurt him); cf. Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (concluding in the Eighth Amendment context that a plaintiff's excessive force claim could survive summary judgment where the plaintiff testified that all five named defendants attacked him and the dispute was only over "[t]he extent of each officer's participation").

and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal quotation marks omitted). An analysis of the reasonableness of an officer's actions "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.; see also Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997) (abrogated on other grounds by Curley v. Klem, 499 F.3d 199 (3d Cir. 2007)) ("Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.").

On appeal, Damiani points to several factual questions that he maintains preclude summary judgment: 1) whether defendants were wearing identifying clothing and had marked police cars when he was stopped; 2) the length of time it took him to put his hands up after he was stopped; 3) whether he resisted following commands and struggled during the course of his arrest; 4) when his handcuffs were transferred from the front of his body to the back; and 5) whether his elbow was injured in the course of his arrest. Damiani does not address his conflicting narratives about the force officers used in

9

completing his arrest. Even interpreting all of the facts highlighted by Damiani in the light most favorable to him, they do not provide a basis for a jury to find that any defendant used excessive force in the course of his arrest.

Rather, the record reflects that when Damiani was stopped, law enforcement officers were faced with an armed suspect of numerous robberies who had just led them on an extensive and dangerous car chase, sitting in a locked car with heavily tinted windows at night. Even if Damiani immediately put up his hands and complied with all commands, the undisputed facts show that he was extracted from his vehicle, had his handcuffs placed behind his back, was searched, and was in custody within a matter of minutes. The minor injuries sustained by Damiani that are supported by the record are consistent with the way that he was quickly extracted from his vehicle, given the immediate risk he posed to officers before they searched and secured him.

The only record evidence that lends support for Damiani's account is his own deposition testimony and documents from his internal complaint with the Delaware State Police. However, Damiani's divergent and conflicting narratives — accounts that changed substantially every time he was asked to describe what transpired during his arrest — are insufficient, standing alone, to permit his claims to survive summary judgment. See Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005) (concluding that summary judgment for the law enforcement defendants was proper where a plaintiff's "testimony — which was largely unsubstantiated by any other direct evidence — was so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made

10

in his complaint") (internal quotation marks omitted).

Summary judgment was therefore properly granted to defendants on Damiani's excessive force claims. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotation marks omitted). Because Damiani's failure to intervene claims depend on a determination that his constitutional rights were violated, those claims also fail. See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). The District Court correctly declined to exercise supplemental jurisdiction over Damiani's state law claims where Damiani's federal claims could not survive summary judgment. See 28 U.S.C. § 1367(c)(3).

Therefore, we will affirm the judgment of the District Court. Additionally, the State of Delaware appellees' motion (as supplemented) to seal their supplemental appendix is granted. The Clerk's Office will seal the appendix for five years, as it contains sensitive personal medical information about Damiani. See L.A.R. 106.1(a); In re Cendant Corp., 260 F.3d 183, 194 (3d Cir. 2001).